The Honorable George T. Woodmansee Mayor, Town of Melbourne Village 535 Hammock Road Melbourne Village, Florida 32904
Dear Mayor Woodmansee:
You ask substantially the following question: May the Town of Melbourne Village install a security gate on a public road limiting access to the road to residents and those nonresidents who have purchased a remote control unit?
In sum, I am of the opinion that:
A municipality is not authorized to install a security gate on a public road which limits access to the road to residents and those nonresidents who have purchased a remote control unit.
According to your letter, the automobile traffic through the Town of Melbourne Village has increased dramatically due to rapid growth in the area surrounding the town. A significant portion of this traffic is apparently caused by motorists seeking to bypass a congested intersection by driving through the town. You state that this additional traffic has affected the "safety, health and welfare and tranquility of the residents living on these neighborhood streets."
The town, in an effort to cut down on this traffic, is interested in installing a security gate on one of the city streets. The street in question has apparently been deeded to, and is being maintained by, the town.[1] Upon installation of the security gate, each town resident would be supplied with a key. Any person, resident or nonresident, would be able to purchase a remote control unit for operating the gate at cost. You state that emergency vehicles would have access by keying their microphones when approaching the gate.
Chapter 316, F.S., the Florida Uniform Traffic Control Law, was enacted to "make uniform traffic laws to apply throughout the state and its several counties and uniform traffic ordi-nances to apply in all municipalities."[2] The purpose of the act was to eliminate the "hodgepodge of ordinances which vary as to language and penalty," resulting in an inconvenience and hazard to travelers.[3]
The provisions of Ch. 316, F.S., are to be "applicable and uniform throughout this state and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any ordinance on a matter covered by this chapter unless expressly authorized."[4] This office has previously stated that Ch. 316, F.S., operates to prohibit any local legislation on traffic control or the enforcement thereof under the police power of a municipality, except as may be expressly authorized by the Uniform Traffic Control Law.[5]
Section 316.006(2)(a), F.S., provides:
Chartered municipalities shall have original jurisdiction over all streets and highways located within their boundaries, except state roads, and may place and maintain such traffic control devices which conform to the manual and specifications of the Department of Transportation upon all streets and highways under their original jurisdiction as they shall deem necessary to indicate and to carry out the provisions of this chapter or to regulate, warn, or guide traffic.[6] (e.s.)
"Street or highway" is defined for purposes of Ch. 316, F.S., to include:
The entire width between the boundary lines of every way or place of whatever nature when any part thereof is open to the use of the public for purposes of vehicular traffic . . . .[7]
In enacting Ch. 316, F.S., the Legislature recognized that there are conditions which require municipalities to pass certain traffic ordinances regulating municipal traffic that are not required to regulate the movement of traffic outside of municipalities. Section 316.008, F.S., expressly enumerates those areas within which a municipality may control certain traffic movement or parking on the streets and highways within their jurisdiction. Among those areas so enumerated are the power to restrict the use of the street, to regulate or prohibit the use of certain roadways by certain classes or kinds of traffic, to alter or establish speed limits within the provisions of the chapter. Those areas susceptible of local regulation, however, do not, in my opinion, empower a municipality to install a security gate across a public street or highway. Such construction would appear to obstruct the free, convenient and normal use of the public road by impeding or restraining traffic on such road in a manner not authorized by Ch. 316, F.S.[8] From the information supplied to this office, it appears that the Department of Transportation and the State Attorney's Office have already advised the town that the installation of such a gate would be illegal.
Accordingly, I am of the opinion that a municipality is prohibited from enacting any local legislation to control or regulate traffic or from attempting to enforce such regulations except as may be expressly authorized by the Uniform Traffic Control Law. While a municipality has been authorized to regulate the use of certain streets within the municipality by a class or kind of traffic or to designate or restrict the use of its streets as prescribed by s. 316.008, F.S., it is not authorized to install a security gate on a public road which limits access to the road to residents and to those nonresidents who have purchased a remote control unit to open the gate.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Cf., AGO 79-14 (municipality may not lawfully expend public funds to repair or maintain privately owned roads or streets where the general public does not have a right to travel). Cf., s.316.006(2)(b), F.S., authorizing a municipality to exercise jurisdiction over private roads under an agreement which provides for reimbursement for the actual costs of traffic control and enforcement and for liability insurance and indemnification.
[2] Section 316.002, F.S.
[3] See, the preamble to Ch. 71-135, Laws of Florida, creating Ch.316, F.S.
[4] Section 316.007, F.S. See, s. 316.002, F.S., stating that it is unlawful for any local authority to pass or attempt to enforce any ordinance in conflict with the provisions of Ch. 316, F.S. Cf., s. 166.021(1), (3) and (4), F.S., which operates to prohibit a municipality from exercising any power for municipal purposes or enacting any municipal regulation when expressly prohibited by law or when the subject matter is expressly preempted to the state by general law.
[5] See, e.g., AGO 80-80 stating that a municipality may not absolutely bar or prohibit the riding or driving of horses or horse-drawn vehicles on the public streets within the municipality.
[6] Section 316.006(2)(b), F.S., authorizes a municipality to exercise jurisdiction over any private road within its boundaries if the municipality and party owning or controlling such roads provide by written agreement for municipal traffic control jurisdiction over the roads provision for reimbursement of the actual costs of traffic control and enforcement and for liability insurance and indemnification by the party.
[7] Section 316.003(53), F.S.
[8] See, s. 316.2045(1), F.S., providing that it is unlawful for any person or persons willfully to obstruct the free, convenient, and normal use of any public street, highway, or road by impeding, hindering, stifling, retarding, or restraining traffic or passage thereon. And see, s. 861.01, F.S., which provides that whoever obstructs any public road by fencing across or into the same or willfully causes any other obstruction in or to such road or part thereof is guilty of a misdemeanor of the first degree.